## William Luce *vs.* Dorchester Mutual Fire Insurance Company.

At the trial of an action on a policy of insurance upon a dwelling-house, "occupied by tenants," which provided that if the risk was increased by the act or with the knowledge or consent of the insured, the policy should be void, it appeared that the house was unoccupied for some months, and that the insured had boarded up the windows. Several experts testified that insurance companies usually charged for insuring unoccupied houses from three to five times as much as they did for insuring those which were occupied; but that if occupied, the risk varied according to the character of the tenants; and that some tenants were worse than no tenants at all. The defendants asked the judge to rule that if the plaintiff might have recovered even for the consequences of the acts of vicious or bad tenants, yet he could not recover if the building was wholly unoccupied for so long a time as to render the risk greater than it would have been with tenants of ordinary care and habits. *Held,* that the refusal so to rule was a good ground of exception.

Contract on a policy of insurance insuring the plaintiff " on his one story frame dwelling-house, occupied by tenants, situate on the south side of Main Street, Mattapoisett," and containing a provision " that whenever a building hereby insured shall be altered, enlarged, or appropriated to any other purposes than those herein mentioned, or the risk otherwise increased by the act, or with the knowledge or consent of the insured, the consent of the directors not being first obtained and signified by the secretary in writing, then this policy shall be void."

At the trial in the Superior Court, after the decision reported in 105 Mass. 297, before *Scudder*, J., it appeared that the house insured was old ; that upon one side of it was an unoccupied house, and upon the other side three buildings, two of which were unoccupied ; that the house insured had been occupied by tenants, but that they moved out several months before the fire which destroyed the house, and, up to the time of the fire, it remained unoccupied ; that no notice that the house was not still occupied

was ever given to the defendants; and that, after the tenants removed from it, its windows were boarded up by the plaintiff, to protect them, and so remained till the fire.

The defendants called as expert witnesses several insurance agents of large experience, who testified " that insurance companies would usually charge from three to five times as much for a premium upon a house known or intended to be unoccupied, as they would charge for the same house occupied; and that the increase of premium would be greater in proportion with an old house, than a new one." Upon cross-examination they testified " that the reason of the larger rate was the danger from incendiarism;" and some of them testified " that the risk, if the house were tenanted, would vary very much with different classes of tenants; that there would be moral risks, growing out of the character of the tenants, depending upon their habits as to care, or the want of it, the number of their little children, and the hazardous articles used by them; that some of these risks were so bad that offices would wholly refuse them; and that some tenants were worse risks than no tenants at all." One of the experts also testified " that in such a case as this the risk would be greatly increased by want of occupancy, and that if he had insured upon the house in question, he should have cancelled the policy at once, on learning that it was unoccupied."

The defendants asked the judge to instruct the jury that " if under this policy the plaintiff might have recovered even for the consequences of the acts of vicious or bad tenants, yet he cannot recover, if the building was wholly unoccupied for so long a time as to render the risk greater than it would have been with tenants of ordinary care and habits." The judge refused so to instruct the jury, but gave instructions to them to which no exception was taken.

The jury returned a verdict for the plaintiff; and to the refusal to instruct the jury as requested the defendants alleged exceptions.

*B. W. Harris & P. E. Tucker*, for the defendants.

*T. M. Stetson*, for the plaintiff.

COLT, J. The building insured by the policy in suit is described as the plaintiff's "one story frame dwelling-house, occupied by tenants, situate on the south side of Main Street." The policy by its terms is declared to be avoided by any increase of the risk by the act or with the knowledge or consent of the assured, whether by altering or enlarging the building, by appropriating it to any other purpose than that mentioned, or in any other manner; and the question submitted to the jury was, whether the act of the plaintiff in boarding up the windows and voluntarily permitting the building to remain unoccupied for several months before the fire increased the risk.

When this case was before us at a previous stage, it was held that the testimony of witnesses, having the requisite knowledge and experience, that it was the custom of insurance companies generally to charge extra premiums upon dwelling-houses intended or known to be unoccupied, was competent, evidence of this description having been rejected at the first trial. The direct question whether such change in the occupation of a dwelling-house increased its liability to be destroyed or injured by fire was at the same time held to be a subject within common knowledge upon which the opinions of witnesses were inadmissible. 105 Mass. 297.

The general instructions which were given to the jury at the last trial were not objected to, and the only question now is whether the specific instruction asked should have been given.

Several witnesses having experience in insurance matters were called by the defendants, who testified that insurance companies generally charged additional premiums upon dwelling-houses known or intended to be unoccupied. On cross-examination, some of them stated that the risk on occupied houses would vary very much with the different kinds of tenants, depending on the moral character, careful or careless habits of the occupant, number and age of his family, or the hazardous nature of the articles used by them in the house, and added that some tenants were worse risks than no tenants at all.

This testimony we think had a direct tendency, unexplained, to mislead the jury on the question whether there had been an

increase of risk within the true meaning of the policy. It was, indeed, mere matter of opinion, and as such not competent in support of the plaintiff's case, but it was in reply to the plaintiff's cross-examination, and being in the case and having a direct bearing on the issue, its effect should have been qualified by the instructions asked.

It is clear that some tenants are worse than none, and that the insured who is himself without misconduct may recover a loss occasioned by the vicious or careless conduct of his tenant, when the actual risk of the same tenement unoccupied would have been less than with such a tenant. But when a comparison is to be made for the purpose of ascertaining whether there is any difference in the risk of loss by fire between occupied and unoccupied dwellings, the risk which attaches to the former, and which the parties by their contract must have contemplated, is to be measured by the average and ordinary character of tenants, not by exceptional and extreme cases, where, from the character of the particular occupant, the actual risk may be largely increased. It is the ordinary dangers to which each class is exposed which must determine the question whether, within the policy, the risk is increased. *Merriam* v. *Middlesex Ins. Co.* 21 Pick. 162.

The instructions asked for were in conformity with these principles, and as they were refused without any equivalent instructions appearing to have been given, the

*Exceptions must be sustained.*